[Civ. No. 20052.   Second Dist., Div. One.   June 24, 1954.]

RAMONA MARKWELL, Appellant, v. SWIFT AND COMPANY (a Corporation) et al., Defendants; GEORGE MARKLEY et al., Respondents.

Manasse & Crowley and Herbert Manasse for Appellant.

Harry C. Cogen, Moss, Lyon & Dunn, Gerald C. Dunn and Henry F. Walker for Respondents.

WHITE, P. J.—This is an action for personal injuries allegedly received by plaintiff when she stepped back and fell over the sill of a window in a drive-in restaurant, from which window the glass had been temporarily removed. In her complaint for damages plaintiff named four defendants

whose negligence she alleged was the direct and proximate cause of her accident and the resulting injuries. After the cause had been called for trial, and before the first witness took the stand, plaintiff in open court dismissed as to the defendants, Swift and Company and Ralph Chilton.

The trial proceeded against the two remaining defendants, P. R. Terrey and George Markley. At the conclusion of plaintiff's case, the last two named defendants moved for a nonsuit which motion was granted as to each of them.

From the judgment of nonsuit entered in favor of the last named defendants, plaintiff prosecutes this appeal.

In her complaint, plaintiff named as defendants Swift and Company, a corporation, George Markley, P. R. Terrey, Ralph Chilton, and two "Does." By the complaint it was alleged that on March 25, 1952, the defendants, and each of them, were engaged in removal of certain old ice cream equipment from a drive-in restaurant in Los Angeles and also engaged in installing new ice cream equipment; that in order to provide ingress and egress, it was found necessary by defendants, and each of them, to remove a pane of glass from the restaurant premises; that defendants, and each of them, thereafter moved out the old equipment and moved in the new. That after the new equipment had been installed in the restaurant premises, "defendants and each of them, did negligently, carelessly and recklessly fail to barricade or guard the opening left by the removal of the pane of glass, thereby causing an extremely unsafe condition on the premises for patrons and employees of the restaurant." It was alleged that plaintiff was an employee of the restaurant and as such was standing on the private sidewalk (on the drive-in premises around its building) adjacent to the place where the pane of glass had been removed; that while plaintiff was so standing a patron approached and plaintiff stepped back to allow the patron to proceed and, as a proximate result of defendants' negligence, tripped over the sill to the open window and fell backwards, receiving injury. The remainder of the complaint alleged the nature and amount of plaintiff's claimed injuries and damages.

Defendant Terrey's answer denied negligence, proximate cause and damage, and also pleaded contributory negligence and assumption of risk as affirmative defenses.

Defendant Markley, by his answer denied negligence and as affirmative defenses, pleaded contributory negligence and unavoidable accident.

At the commencement of the trial and before any witnesses were called on behalf of plaintiff, the following proceedings took place before the trial judge in chambers:

"The Court: Now, as I understand it, you want to dismiss—you are Mr. Manasse.

"Mr. Manasse (attorney for plaintiff): Manasse, yes sir.

"The Court: And you want to dismiss as to Swift & Company, a corporation, and Ralph Chilton; is that right?

"Mr. Manasse: That is right.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Mr. Shera (attorney for Swift & Company): I would like to have a stipulation at this time that the plaintiff, Ramona Markwell, will give a covenant not to sue and a covenant not to sue further in a form acceptable to Swift & Company and Mr. Chilton, by June 20, 1953.

"Mr. Manasse: That is in consideration of the payment to us.

"Mr. Shera: In the sum of $250 on behalf of Swift & Company, $100 on behalf of Mr. Chilton.

"Mr. Manasse: Right.

"Mr. Shera: Thank you very much, your Honor.

"The Court: I understand the case is dismissed as to Swift & Company, as to Ralph Chilton, and as to the John Does?

"Mr. Manasse: That is right, yes sir."

The court then made an order as follows: "Pursuant to stipulation the Court orders this action dismissed as to defendants Swift & Company, a corporation, Ralph Chilton, Doe I, and Doe II. Due to the fact that both defendants Swift & Company, a corporation, and Ralph Chilton made settlements with the plaintiff, said defendants are not given judgment for their costs."

At the conclusion of plaintiff's case, defendant Markley moved for a nonsuit on the following grounds:

"(1) That there was no evidence of any negligence on the part of any of the defendants.

"(2) That if there was any evidence of negligence, such negligence was not the proximate cause of the damage or injuries suffered by the plaintiff.

"(3) That the contributory negligence of the plaintiff was the proximate cause of plaintiff's injuries.

"(4) That the defendant, P. R. Terrey, was an independent contractor, and the defendant, George Markley, was not re-

sponsible for the negligent conduct, if any, of such independent contractor.

"(5) That the dismissal of the defendants, Swift & Company and Ralph Chilton, constituted a retraxit and barred any recovery against the remaining defendants."

The defendant Terrey also moved for a nonsuit on all of the grounds advanced by the defendant Markley, with the exception only of ground number 4.

The motion was granted as to both defendants.

Viewing the evidence in a light most favorable to plaintiff, as we are required to do on appeal from a judgment of nonsuit, we regard the following as a fair narrative thereof:

The plaintiff was, on the date of her accident, employed as a car hop at a drive-in restaurant known as the Wich-Stand, located on the corner of Florence Avenue and Figueroa Street, in the city of Los Angeles. The defendant, George Markley, who does business under the fictitious name and style of American Ice Cream Company, is an independent ice cream distributor who buys all of his ice cream from Swift and Company. It appears to have been the practice, when Markley obtained a new customer who agreed to purchase Swift and Company's ice cream for him to arrange to place Swift and Company's ice cream equipment in the customer's place of business. Markley had apparently just gotten the Wich-Stand as a new customer, and in accordance with the accepted procedure, had made arrangements to substitute Swift and Company's ice cream equipment for the ice cream equipment then in use. When it came to replacing the old equipment with the new, it was discovered that the doors into the drive-in restaurant were not large enough to permit the removal of the existing equipment and the replacement thereof with the new. Ralph Chilton was sent out by Swift and Company to survey the situation, and after he inspected the premises he recommended that one of the large panes of glass which enclosed the interior of the drive-in restaurant be removed so as to permit the removal of the old equipment and the substitution of new cabinets. The defendant Markley telephoned Terrey Glass Company and made arrangements to have defendant Terrey come out on the morning of March 25th to remove the one pane of glass until the substitution of equipment could be accomplished, and then he was to replace the glass. Mr. Terrey came out as scheduled about 10 a. m., on the morning of March 25th and proceeded to remove one

of the panes of glass. In the process of removing the glass, the pane was broken. Mr. Terrey cleaned up the debris and drove back to his place of business to get a new pane of glass. He returned about 1 in the afternoon and finished the job of replacing the glass. The window in question was without any glass from approximately 10:30 in the morning until about 1 in the afternoon. During that interval no barricades or warning signs of any sort were placed at or near the open window to warn persons that the window was open and contained no glass.

The plaintiff, Ramona Markwell, had come on duty at the drive-in restaurant at about 9 on the morning of the accident. She testified that she observed the glass being removed between 9:15 and 9:30 a. m., that morning, and that the substitution of ice cream equipment had been completed at about 10 a. m. The accident which resulted in her injuries occurred at about 12:30 p. m. Just prior to the accident she had finished waiting on a customer and was standing on the sidewalk which circled the restaurant premises, just immediately in front of the open window. She was well aware of the fact that there was no glass in the window in question. She testified that as she was standing on the sidewalk, two men came around the side of the drive-in, and as they walked past her she stepped back and tripped over the steel sill of the open window, which sill was about 18 inches high. She fell back into the interior of the drive-in, and suffered the injuries for which she now claims damages. She stated that as she stepped back, she momentarily forgot that the window was out.

█ This action sounds in tort, and a tort, in contemplation of law, consists in a violation of a duty imposed by general law or otherwise upon persons occupying the relation to each other which is involved in a given transaction (*Hallidie* v. *Enginger*, 175 Cal. 505 [166 P. 1]). As we view the complaint herein, appellant seeks to recover because respondents neglected to do something which they ought to have done, whereby the former suffered injury. This we gather from the averments of the complaint alleging that respondents, "did negligently, carelessly and recklessly fail to barricade or guard the opening left by the removal of the pane of glass. . . ."

█ From appellant's contention it is apparent that she claims respondents owed her the duty to barricade or arrange for barricading the window upon removing the pane of glass,

to warn her, or to place or arrange for placing warning signs at the site of the dangerous condition. But the decisions are unanimous in holding that notice or warning is not necessary where the danger is obvious, or the person injured has actual notice thereof. To have warned appellant herein by barriers or otherwise that the pane of glass had been removed would be but to have informed her of dangers and conditions, of the existence of which she was admittedly aware. Where one has knowledge of the existence of a dangerous condition, the question of warning becomes immaterial and can have no causal connection with the injury sustained. ■ When a danger is so apparent that an invitee on the premises can reasonably be expected to notice it and protect against it, or where as here, the appellant invitee was admittedly aware of the existing condition, the latter constitutes adequate warning (*Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556, 560, 561 [296 P. 76]; *Walker* v. *Greenberger*, 63 Cal.App.2d 457, 461, 462 [147 P.2d 105]). While these cases refer to the liability of an owner or possessor of land, it follows that no liability would attach to respondents herein if, under the facts, there would be no liability were they the possessors of the premises.

■ If it was negligence for respondent Terrey to permit the space in question to remain unbarricaded after removal of the pane of glass therefrom, there appears to be no escape from the conclusion that it was negligence for appellant, with full knowledge of the existence of such condition, to place herself in a position wherein injury might be sustained by her as a result thereof. Her knowledge of the existence of the dangerous condition was at least equal to that of respondent Terrey, who removed the pane of glass.

However, appellant contends that the facts herein merely present a case of negligence based upon momentary forgetfulness of a known danger and that generally the question is one for the jury's determination. ■ But to excuse one's failure to avoid a known peril because of momentary forgetfulness, such forgetfulness must be induced by some sudden and adequate disturbing cause. A lapse of memory in the presence of known danger, in order to relieve a plaintiff from contributory negligence, must be occasioned by a reasonable cause and not from mere inattention. In other words, it must be induced by some sudden and adequate disturbing cause, and where, as here, there was a transitory or short-lived period of oblivion to a known danger, not induced by some sudden

and inadvertent disturbing cause, such oblivion and forgetfulness is negligence as a matter of law (*Henry J. Kaiser Co.* v. *Industrial Acc. Com.*, 81 Cal.App.2d 818, 827, 828 [185 P.2d 353]; 38 Am.Jur., § 187, p. 863). ■ Where different conclusions may be reasonably drawn by different minds from the same evidence, the decision must be left to the triers of fact. ■ But, where as in the instant case, it must be said from a review of the evidence, giving full credit only to that portion thereof which tends to support the allegations contained in the appellant's complaint, indulging in every legitimate inference which may be drawn from that evidence, the determination inevitably follows that there is no evidence of sufficient substantiality to support a verdict in favor of appellant, if such verdict were rendered, under well-established rules and the settled law of this state we must affirm the judgment of nonsuit rendered. The foregoing conclusion at which we have arrived ordinarily would render it unnecessary to discuss respondents' contention that the dismissal of defendants Swift and Company, a corporation, and Ralph Chilton constituted a retraxit and barred any recovery against the remaining defendants, who are respondents herein. However, since we are convinced that respondents' contention in this regard furnishes an added reason why the judgment of nonsuit must be affirmed, we are disposed to give consideration to the issue of retraxit raised in the trial court and on appeal.

■ While it is true, as contended by appellant, that a mere covenant not to sue one or more joint tort feasors does not operate to relieve other joint tort feasors (*Kincheloe* v. *Retail Credit Co.*, 4 Cal.2d 21 [46 P.2d 971]; *Lewis* v. *Johnson*, 12 Cal.2d 558 [86 P.2d 99]), such however is not the situation here presented. From a review of the proceedings that took place in chambers before the trial judge it is at once manifest that in consideration of the payment of $250 by defendant Swift and Company and $100 by defendant Ralph Chilton, the action, on motion of appellant herein, was dismissed as to said last named defendants. The question to be determined is whether such a voluntary dismissal of two of the alleged tort feasors upon payment of a valuable consideration, under the circumstances here shown, is sufficient to constitute a retraxit and bar recovery against the remaining defendants.

■ The generally accepted rule was thus stated in *Key* v. *Caldwell*, 39 Cal.App.2d 698, 701 [104 P.2d 87]: "It is settled that before a voluntary dismissal as to one defendant

will operate as a release of a co-defendant it must appear that the defendants are joint tort-feasors and that plaintiff has received some satisfaction for such dismissal. (Citing cases.)''

In *Hildebrand* v. *Delta Lbr. etc. Co.*, 67 Cal.App.2d 88, 90 91 [153 P.2d 377], the court adopted the foregoing rule in the following language:

''The first issue raised by defendants is that the dismissal filed as to the defendant Oliver amounted to a retraxit and operated as a release of the other defendants.

''The common law rule of retraxit is predicated upon the theory that a complainant who has been compensated for his injury by one of the joint tort feasors is not entitled to a second recovery from the others. (Case cited.)

''The mere discontinuance as to one of the several joint tort feasors without a showing that satisfaction was given for such discontinuance does not operate to release the others. (Citing cases.)'' (See also *Hawber* v. *Raley*, 92 Cal.App. 701, 707, 708 [268 P. 943].)

The rule therefore, would appear to be that where, as in the case at bar, the record discloses that a voluntary dismissal was entered as to two defendants in consideration of appellant having received some satisfaction in compensation for her injuries, all the requisite elements necessary to establish a retraxit, namely a voluntary dismissal and the receipt of some satisfaction, were present.

Appellant relies upon the earlier case of *Lewis* v. *Johnson*, 12 Cal.2d 558 [86 P.2d 99], in support of her claim that the dismissal of defendants Swift and Company and Chilton did not constitute a retraxit. The facts in the case just cited are somewhat similar to the factual situation in the instant case in that plaintiff entered into an agreement with two of the defendants entitled ''covenant not to sue and covenant not to sue further.'' Based upon this agreement plaintiff in the Lewis case filed a dismissal with the clerk as to the defendants named in the agreement. The holding of the Supreme Court was that the dismissal did not amount to a retraxit. However the court draws a distinction between a dismissal voluntarily made by application to the clerk and a dismissal entered in open court, stating, ''There is a well recognized distinction between a dismissal voluntarily made by the clerk's entry, which is presumed to be without prejudice to the bringing of another action, and a dismissal entered in open court pursuant to stipulation, which is ordinarily effective as a *retraxit*. In the absence of such stipulation or

motion addressed to the court, there is no *retraxit*. (Citing cases.) ''

In the case at bar, there was not a mere covenant not to sue, in fact, no such document had been executed. There was, however, a dismissal ordered by the court of two alleged joint tort feasors pursuant to stipulation and for consideration.

Decisive of the question is the language of the court in *Lamb* v. *Herndon*, 97 Cal.App. 193, 202 [275 P. 503], as follows:

''A *retraxit* occurred at common law when a plaintiff came into court in person and voluntarily renounced his suit and cause of action. Under our law this *authority* is deemed to have been conferred upon the attorney. (*Westbay* v. *Gray*, 116 Cal. 660. [48 P. 800]; *Merritt* v. *Campbell*, 47 Cal. 542, 543.)

''In the case under consideration, had the application for dismissals . . . been made in open court upon the agreement of the litigants as hereinbefore set forth and thereupon the court had entered judgments of dismissal they would have been judgments on *retraxit* and would have barred further litigation of the matter involved. (Citing cases.) '' (See also *Flynn* v. *Manson*, 19 Cal.App. 400 [126 P. 181]; *Merritt* v. *Campbell*, 47 Cal. 542, 543; *Chetwood* v. *California Nat. Bank*, 113 Cal. 414 [45 P. 704].)

We are persuaded that under the foregoing authorities the judgment entered herein pursuant to stipulation for consideration operated as a retraxit and relieved the other joint tort feasors of liability to appellant.

Finally, appellant urges that if it be held that her action in dismissing as to two of the joint tort feasors amounted to a retraxit, respondents, in order to avail themselves thereof must plead the same affirmatively in their answer or by way of supplemental answer. None of the cases cited by appellant in support of her contention involved retraxit, release or covenant not to sue.

In the case now engaging our attention, the action upon which respondents base their defense of retraxit arose after the commencement of the trial. It seems to us that it would have been a useless and unnecessary act for respondents at that stage of the proceedings to have requested leave to amend to set up such an affirmative defense. That appellant was not prejudiced or surprised in any way is evidenced by the fact that she at no time raised any objection to the posi-

tion taken by the respondents in the trial court. It would seem to come rather late when urged for the first time on appeal. Furthermore, it is not always essential to plead affirmatively such a matter. Where the evidence and proceedings before the trial court show a retraxit, the defense may be availed of, even though not affirmatively set up by a defendant (*Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556, 562 [296 P. 76] ; *Chetwood* v. *California Nat. Bank, supra*, p. 428).

For the foregoing reasons, the judgment is affirmed.

Doran, J., and Drapeau, J., concurred.